IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEWIS A. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:17-CV-379-ALB-JTA |
| | ) | |
| OFFICER CLARENCE REID, *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Lewis A. Mitchell ("Mitchell"), a pre-trial detainee confined in the Elmore County Jail, asserting that his arrest on June 17, 2016 in Elmore County was unlawful because the police officers had no probable cause to enter his home and search and arrest him. Mitchell names Elmore County police officers Clarence Reid, Elizabeth Dailey, Charles Shannon, Ed Gumpf (identified in the complaint as "officer badge #921) and Darrell Spraggins (identified in the complaint as "officer badge #904) as defendants (collectively "Defendants"). He seeks monetary relief for the alleged violations of his constitutional rights.

The defendants filed an answer, special report, and supporting evidentiary materials addressing Mitchell's claims for relief. In these documents, the defendants deny violating Mitchell's constitutional rights.

After the defendants filed their initial special report, the court issued an order directing Mitchell to file a response to the arguments set forth by the defendants in the

report and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. (Doc. 21). The order specifically advised the parties that "at some time in the future the court will treat the defendants' report . . . as a dispositive motion[.]" *Id*. In addition, the order specifically cautioned the parties that "<u>unless within fifteen (15) days from the date of this order a party files a pleading which presents sufficient legal cause why such action should not be undertaken</u> . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and <u>without further notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." (Doc. 21 at p. 3) (emphasis in original). Mitchell filed a timely response to this Order on August 22, 2017. (Doc. 25).

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the defendants' reports (Doc. No. 17) as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

Cir. 2007) (internal quotation marks omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant

documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub.*

*Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted)

("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion."  *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990).  In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Mitchell has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *See Matsushita*, 475 U.S. at 587.

## III. RELEVANT FACTS[1]

On Friday, June 17, 2016, at 7:30 p.m., the Wetumpka Police Department received an emergency call from a fifteen-year-old female at a residence on Stone River Loop in Wetumpka, Alabama reporting she had just been raped by her stepfather, Lewis Mitchell. (Docs. 17-1 at p. 1, 17-6 at p. 1; 17-7 at pp. 1-3). Within minutes, Officer Elizabeth Dailey responded to the scene and observed a female juvenile standing in the driveway outside the residence. Officers Charles Shannon and Darrell Spraggins also reported to the scene. (Docs. 17-1 at p. 1, 17-2 at p. 1; 17-7 at pp. 2-3). Mitchell was inside the house, so Officer

---

[1] The facts are construed in the light most favorable to the plaintiff, as this court must do. *See Beard*, 548 U.S. at 525.

Dailey moved the juvenile away from the residence where she could speak to her safely. (Docs. 17-1 at p. 1; 17-7 at pp. 2-3).  Officers Shannon and Spraggins attempted to have Mitchell exit the residence, but he refused and became irate and called into dispatch demanding to speak with an officer.  (Docs. 17-2 at p. 1; 17-6 at p. 1).  Dispatch advised the officers that Mitchell had a weapon, a Beretta handgun.  (*Id.*)  At this point Officer Ed Gumpf was called to the scene as a supervising lieutenant.  (Doc. 17-4 at p. 1).  After talking back and forth with the officers on the scene for nearly an hour, Mitchell exited the house unarmed and was apprehended by Officer Shannon, handcuffed, and placed in custody.  (Docs. 17-2 at p. 1; 17-10 at p. 1).  Officer Shannon read Mitchell his Miranda rights and transported him to the Elmore County Jail, where he was placed on investigative hold.  (Docs. 17-2 at pp. 1-2; 17-7 at p. 3).  Other than placing Mitchell into handcuffs, no force was used by any officer against Mitchell.  (Docs. 17-2 at p. 2; 17-3 at pp. 2-3; 17-4 at p. 1).

During this time, Haynes Ambulance arrived at the scene and examined the juvenile to ensure that she was not visibly injured.  (Docs. 17-1 at p. 1; 17-7 at p. 2).  After the examination, the juvenile provided a detailed report of the incident to Officer Dailey.  (*Id.*)  She told Officer Dailey that she had been at home alone when Mitchell arrived at the residence around 7:00 p.m.  (*Id.*)  Mitchell told her to undress and come into the master bathroom to shower with him, which she did.  (*Id.*)  He told her that he "wanted her to get a good nut" and used a vibrator in her vagina.  (*Id.*)  He then told her to get out of the shower and lay on his bed in the master bedroom.  (*Id.*)  He entered the bedroom and bent over the bed and began to rape her from behind.  (*Id.*)  The juvenile told Officer Dailey that

once he finished raping her, she sat on a couch in the bedroom and Mitchell forced her to perform oral sex until he ejaculated in her mouth. (*Id.*) Mitchell then instructed her to go "clean up." (*Id.*) The juvenile reported that she went to the master bathroom where she spit the semen into a small white trash can and wiped off the rest with a hand towel. (*Id.*) She told Officer Dailey that she did not clean or wipe anything off from her private areas. (*Id.*) She also stated that once she got away from Mitchell, she stood in the driveway and called 911. (*Id.*)

Detective Clarence Reid arrived at the residence to secure the scene and collected items for evidence based on the juvenile's account. (Docs. 17-5 at p. 2; 17-7 at p. 3). After the scene was secure, Officer Dailey transported the juvenile and her mother, who had arrived at the residence, to the Wetumpka Police Department where they met with Detective Reid. (Docs. 17-5 at p. 2; 17-10 at p. 1). The juvenile stated that Mitchell had raped her four times previously, the first time being in March of 2016. (Docs. 17-1 at p. 2; 17-7 at p. 3). She told Officer Dailey that she was afraid of Mitchell and had not reported the prior rapes because Mitchell had threatened that "if she told anyone something would happen." (*Id.*)

Detective Reid contacted the Alabama Department of Human Resources, the on-call District Attorney, and S.T.A.R. to set up a rape exam. (Docs. 17-5 at p. 2; 17-10 at p. 1). The juvenile was then taken to One Place Family Justice Center, where a rape exam was performed. (*Id.*) The following Monday morning, June 20, 2016, felony warrants for Rape in the First Degree and Sodomy were obtained and served on Mitchell, and his Miranda rights were given to him again. (*Id.*) On October 20, 2016, Detective Reid

received a report from the Alabama Department of Forensic Sciences, indicating that the semen evidence collected was a positive match for Lewis Mitchell. (Doc. 17-8 at p. 2). Detective Reid did not have to obtain DNA evidence from Mitchell as his DNA reference was already in the Alabama DNA Databank from an incident involving the Dothan Police Department in 2015. (Doc. 17-8 at p. 1). The report indicated that the DNA match was positive to a degree that the odds of another individual being involved was 1 in 151 trillion. (Doc. 17-8 at p. 2).

Mitchell made a first appearance in the District Court of Elmore County, Alabama on the charges of Rape First Degree and Sodomy First Degree, and was given a bond of $100,000.00 per charge, with additional agreements that he was required to appear in court for any and all settings, he could not be arrested for any other criminal charges, he could not leave the state, he must promptly notify the court of any change in address, and he could not have any contact with the alleged victim. (Doc. 17-9 at pp. 1-2). The Judge authorized that the bond be "cash bond only" and concluded that he considered Mitchell a flight risk and a danger to the victim and the public. (Doc. 17-9 at pp. 1-2, 7). On July 19, 2016, the charges were bound over to the grand jury which entered a true bill. (Doc. 17-9 at pp. 3, 16). Mitchell's bond was reduced to $75,000 per charge and the cash bond requirement was lifted. (Doc. 17-9 at p. 16). On February 7, 2017, Mitchell entered a plea of not guilty and waived his arraignment. (Doc. 17-9 at p. 20).

## IV. DISCUSSION

Among other allegations of constitutional deprivations, Mitchell asserts that the defendants violated his constitutional right to be free from an unlawful arrest. Specifically,

he claims violations of his First, Second, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and alleges the police officers violated his rights to "due process, proper fashion of criminal procedure, right to speech [and] right to arms," "right to life and liberty, cruel and unusual treatment, intimidation, entrapment, wrongful arrest, intent to kill me, illegal search, no probable cause, [and] tampering with evidence," and "violation of religious rights and civil rights and false police documents." (Doc. 5 at p. 3).

Plaintiff's narrative account of the incident states that the Defendant officers "did no proper investigation or none at all, told me to stop recording them on video, would not tell me why they were at my house or what was going on, yelling at me to put a gun down, but I had no gun in my hand, coming into my yard without a warrant or investigation being done." (*Id.*) Plaintiff goes on to explain that the officers "pointed guns at [him] when [he] was standing with [his] hands up" making him fear for his life, and told him that he was not under arrest but when he exited the residence, Officer Shannon took him to a patrol unit, searched him, handcuffed him, and placed him in the patrol vehicle. (*Id.*) Plaintiff complains that the officers then entered his residence without warrants. (*Id.*) He further states that Officer Shannon transported him to the Elmore County Jail, where he was processed and placed into a jail cell, which he complains was done without a warrant, bond, statements, police report or investigation. (*Id.*) Plaintiff also complains that he was forced to break his Ramadan fast and was not allowed to pray in jail. (*Id.*)

Plaintiff also alleges that on the following Monday, June 20, 2016, Detective Reid came to the jail and presented him with two "back-dated" warrants "with false dates." (*Id.*)

He requested that Detective Reid call his lawyer and Reid "said no." (*Id.*) He also complains that Detective Reid refused to return his property. (*Id.*) Plaintiff alleges that the removal of evidence from his bedroom and bathroom was unlawful, and that Detective Shannon removed his phone and wallet at the scene. (Doc. 5 at p. 4). Plaintiff also alleges that the victim was "coached into what to say" based on the fact that she was transported in a patrol unit from the scene. (*Id.*) Plaintiff also complains that false documents were created during the investigation. (*Id.*) Finally, he claims that his arrest and prosecution were in "retaliation" for a "report [he] did against the [Wetumpka Police Department] to the [Department of Justice]." (*Id.*)

## A.  Fourth and Fourteenth Amendment Claims

Plaintiff alleges that his seizure and the subsequent search of his residence violated his rights under the Fourth Amendment. Plaintiff apparently bases these contentions on the fact that the officers did not have warrants at the time of the search and seizure. He also alleges that he was falsely imprisoned as a result of the unlawful search and seizure.

"The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

> To establish a violation of the Fourth Amendment, [a plaintiff] must demonstrate that [his] arrest was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.") (quotation marks omitted). An arrest is unreasonable if it is not supported by probable cause. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id*. (citing *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

*Walker v. City of Hunstville, Ala.*, 310 F. App'x 335, 337 (11th Cir. 2009).  "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends upon the totality of the circumstances."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  It is well-settled that "probable cause is a flexible, common-sense standard. . . .  [I]t does not demand any showing that [the officer's belief an offense has been or is being committed] is correct or more likely true than false."  *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Probable cause to arrest is present when the arrest is "objectively reasonable based on the totality of the circumstances. . . .  This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. . . .  Although probable cause requires more than suspicion, it does not require convincing proof . . . and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citations omitted); *Brown*, 608 F.3d at 734  ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution

to believe that a criminal offense has been or is being committed."); *see also Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.").   "Whether probable exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Pringle*, 540 U.S. at 371).

"To determine whether an officer had probable cause to arrest an individual, [federal courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).   In making this determination, a court must examine the elements of the charge(s) on which the plaintiff was arrested as the question of "[w]hether a particular set of facts gives rise to probable cause . . . to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby*, 394 F.3d at 1333.

It is undisputed that at the time of the arrest challenged herein the police officers were responding to an emergency call from a fifteen-year-old female at a residence on Stone River Loop in Wetumpka, Alabama reporting she had just been raped by her stepfather, Lewis Mitchell.  (Docs. 17-1 at p. 1, 17-6 at p. 1; 17-7 at pp. 1-3).  After arriving on the scene, Officers Shannon and Spraggins attempted to have Mitchell exit the residence, but he refused and became irate and called into dispatch demanding to speak with an officer.   (Docs. 17-2 at p. 1; 17-6 at p. 1).  Dispatch advised the officers that

Mitchell had a handgun.  (*Id*.)  After talking back and forth with the officers on the scene for nearly an hour, Mitchell exited the house unarmed and was apprehended by Officer Shannon, handcuffed, and placed in custody.  (Docs. 17-2 at p. 1; 17-10 at p. 1).  Officer Shannon read Mitchell his Miranda rights and transported him to the Elmore County Jail, where he was placed on investigative hold.  (Docs. 17-2 at pp. 1-2; 17-7 at p. 3).

During this time, Haynes Ambulance arrived at the scene and examined the juvenile to ensure that she was not visibly injured.  (Docs. 17-1 at p. 1; 17-7 at p. 2).  After the examination, the juvenile provided a detailed report of the incident to Officer Dailey.  (*Id.*) She told Officer Dailey that she had been at home alone when Mitchell arrived at the residence around 7:00 p.m.  (*Id.*)  Mitchell told her to undress and come into the master bathroom to shower with him, which she did.  (*Id.*)  He told her that he "wanted her to get a good nut" and used a vibrator in her vagina.  (*Id.*)  He then told her to get out of the shower and lay on his bed in the master bedroom.  (*Id.*)  He entered the bedroom and bent over the bed and began to rape her from behind.  (*Id.*)  The juvenile told Officer Dailey that once he finished raping her, she sat on a couch in the bedroom and Mitchell forced her to perform oral sex until he ejaculated in her mouth.  (*Id.*)  Mitchell then instructed her to go "clean up."  (*Id.*)  The juvenile reported that she went to the master bathroom where she spit the semen into a small white trash can and wiped off the rest with a hand towel.  (*Id.*) She told Officer Dailey that she did not clean or wipe anything off from her private areas. (*Id.*)  She also stated that once she got away from Mitchell, she stood in the driveway and called 911.  (*Id.*)

Based on all this information, the officers arrested Mitchell.  Although Plaintiff alleges that the juvenile's statements were "coerced" or "orchestrated," there is no evidence of any coercion.  The juvenile, who was fifteen years old and thus capable of understanding and explaining the situation, called the Wetumpka Police Department to report the rape.  Following the victim's call to 911, the officers arrived on the scene, took her statement and arrested Plaintiff when he exited the residence.  Accordingly, the Court concludes probable cause existed to arrest Mitchell for rape.  Furthermore, the Court concludes that Plaintiff's claim for false imprisonment fails because the Court has found probable cause existed for Mitchell's arrest.  *See Ortega v. Christian,* 85 F.3d 1521, 1526 (11th Cir. 1996).

Mitchell also contends that the warrantless search of his bedroom and bathroom were also unlawful.  Based upon the juvenile's statements to the police, both Mitchell's bedroom and bathroom were places where evidence of the crimes could be found.  Indeed, the juvenile stated that Mitchell raped her and forced her to perform oral sex in the bedroom and that she spit the semen in the trash can of the bathroom.  It is undisputed that the police did not have a warrant to search these areas.  However, the law is clear that "warrantless entry by law enforcement may be legal when there is compelling need for official action and not time to secure a warrant."  *United States v. Holloway,* 290 F. 3d 1331, 1334 (11th Cir. 2002) (citation omitted).  The exigent circumstances exception deals with situations where timely procurement of a warrant is not possible, including "danger of flight or escape, **loss or destruction of evidence,** risk of harm to the public or the police, mobility of a vehicle, and hot pursuit."  *Id.*  (citation omitted) (emphasis added).

In the instant action, the juvenile had specifically identified the bedroom and bathroom as locations where DNA evidence related to the crimes could be found. Because this evidence could easily be destroyed by anyone living in or present at the home, including the victim's mother and siblings, the Court concludes that a warrantless search was justified in this case. Thus, the Court concludes that Mitchell's claim of an unconstitutional search and seizure fails.

### B. Eighth Amendment Claims

Plaintiff includes no allegation of an Eighth Amendment violation in his Complaint, except for listing "cruel and unusual treatment" as a claim. (Doc. 5 at p. 3). Indeed, he fails to include any factual allegations in his Complaint from which the Court could infer an Eighth Amendment violation. However, in his response to Defendants' Special Report, he includes several exhibits concerning the condition of his heart and states "[p]laintiff's medical needs have been deliberately avoided during Plaintiff's confinement and Defendants' knowledge of medical issues and conditions that he is incarcerated under." (Docs. 25 at p. 1; 25-5; 25-21; 25-22). He also states that he was injured in a fall on the jail stairs on September 19, 2016 and was denied medical care. (Doc. 25 at p. 6).

Plaintiff's attempt to state a deliberate indifference claim fails because he does not plead facts that allege a denial of medical treatment by the named Defendants. Indeed, Plaintiff names only the police officers involved in his arrest as Defendants and fails to allege that any of these Defendants denied him access to medical care. Nor does Plaintiff identify who at the jail allegedly denied him medical treatment. Rather, Plaintiff's exhibits show that on August 8, 2016, he was transported from the Elmore County Jail to Elmore

County Hospital for an EKG.  (Doc. 25-5).  Accordingly, the Court concludes that Plaintiff fails to state a claim for deliberate indifference.

### C.  First and Second Amendment Claims

Plaintiff alleges that during his arrest, Defendants violated his First and Second Amendment rights.  Specifically, he alleges that his rights to free speech were violated when the officers told him "to stop recording" their actions on video.  (Doc. 5 at pp. 2-3).  However, as a matter of law this allegation does not state a First Amendment claim.  *See Childress v. Walker,* 943 F. Supp. 2d 1332, 1345 (M.D. Ala. 2013) (A police officer, who has probable cause to believe a crime has been or is being committed, may lawfully arrest a subject even though the subject is engaged in an activity protected by the First Amendment at the time of the arrest.)  Plaintiff also makes the barebones allegation that while in the Elmore County Jail he "had to break Ramadan fast, and [he] was not allowed to pray."  (Doc. 5 at p. 3).  However, Plaintiff names only the police officers involved in his arrest as Defendants and fails to allege that any of these Defendants prevented him from praying or made him break his Ramadan fast.  Nor does Plaintiff identify who at the jail allegedly prevented him from exercising his First Amendment Rights.  Accordingly, the Court concludes that Plaintiff fails to state a claim for violation of his First Amendment rights.

Plaintiff also alleges that Defendants violated his Second Amendment rights when they instructed him "to put a gun down" during the arrest.  (Doc. 5 at p. 3).  The undisputed facts show that Plaintiff advised dispatch that he had a weapon which prompted the officers to instruct him to drop his weapons.  (Docs. 17-2 at p. 1; 17-6 at p. 1).  Plaintiff was not

prevented from "bearing arms" as protected by the Second Amendment. Rather, he was simply instructed not to brandish his gun during his encounter with officers. Thus, the Court concludes that Plaintiff fails to state a claim for violation of his Second Amendment rights.

### D. Fifth and Ninth Amendment Claims

It is not clear to the Court what actions of the named Defendants Plaintiff claims underlie his Fifth and Ninth Amendment claims. Even so, as a matter of law, Plaintiff's Fifth Amendment claims fail because the Fifth Amendment protections apply only to the actions of the federal government, which are not at issue here. *Hardy v. Town of Hayneville,* 50 F. Supp. 2d 1176, 1186 (M.D. Ala. 1999). Likewise, as a matter of law, Plaintiff's Ninth Amendment claims fail because there are no constitutional rights secured by this amendment. *Charles v. Brown,* 495 F. Supp. 862, 863 (N.D. Ala. 1980). ("The Ninth Amendment does not specify the rights of the people, rather it serves as a savings clause to keep from lowering, degrading or rejecting any rights which are not specifically mentioned in the [Constitution] itself.").

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment (Doc. No. 17) be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. Costs be taxed against the plaintiff.

On or before **May 27, 2020** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of May, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE